UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

| | |
|---|---|
| ROMMEL AMANSEC, *on behalf of himself and those similarly situated*,<br><br>　　　　　Plaintiff,<br>v.<br><br>MIDLAND CREDIT MANAGEMENT, INC.,<br><br>　　　　　Defendant. | Civil Action No.<br>2:15-CV-08798-SDW-SCM<br><br>**ON DEFENDANT'S MOTION TO COMPEL INDIVIDUAL ARBITRATION**<br><br>**[D.E. 84]** |

## REPORT & RECOMMENDATION

**STEVEN C. MANNION**, United States Magistrate Judge.

　　　Before this Court is Defendant Midland Credit Management, Inc.'s ("Midland Credit") renewed motion to compel individual arbitration and dismiss Plaintiff Rommel Amansec's ("Mr. Amansec") Complaint.[1] Mr. Amansec filed an opposition[2] and Midland Credit filed a reply.[3] Then, Mr. Amansec moved for leave to file a sur-reply,[4] which Midland Credit opposed[5] and Mr.

---

[1] (Electronic Case Filing Docket Entry ("D.E.") 84, Def.'s Mot.). Unless indicated otherwise, the Court will refer to documents by their docket entry number and the page number assigned by the Electronic Case Filing System.

[2] (D.E. 89 & 90, Pl.'s Opp'n).

[3] (D.E. 97, Def.'s Reply).

[4] (D.E. 100, Pl.'s Mot. for Leave to File Sur-Reply).

[5] (D.E. 106, Def.'s Opp'n).

Amansec replied.[6] The Honorable Susan D. Wigenton, U.S.D.J. referred the pending motions to the undersigned for a report and recommendation.[7] After considering the parties' written submissions, the Court decides this matter without oral argument.[8] For the reasons set forth below, it is respectfully recommended that Mr. Amansec's motion for leave to file a sur-reply be **DENIED AS MOOT** and Defendant Midland Credit's motion to compel individualized arbitration and dismiss the action be **DENIED**.

I. <u>**BACKGROUND & PROCEDURAL HISTORY**</u>

The facts set forth in my Report and Recommendation dated January 20, 2017, are incorporated herein by reference.[9] The Court supplements those facts to the extent necessary to resolve the present motion.

This case involves alleged violations of the Fair Debt Collection Practices Act ("FDCPA") resulting from Midland Credit's attempt to collect a debt from Mr. Amansec.[10]

Mr. Amansec applied and received approval for a "MetaBank" Fingerhut credit card on May 6, 2012.[11] The parties dispute whether Mr. Amansec received the "Welcome Packet," which included a credit card agreement ("Original Agreement").[12] Midland Credit asserts that Bluestem

---

[6] (D.E. 107, Def.'s Reply).

[7] L. Civ. R. 72.1(a)(2).

[8] *See* Fed. R. Civ. P. 78.

[9] (D.E. 30, R. & R.).

[10] (D.E. 1, Compl.).

[11] (D.E. 84-1, Def.'s Mot. Br., Statement of Undisputed Facts, at ¶ 3).

[12] (*See* D.E. 84-1, Def.'s Mot. Br., Statement of Undisputed Facts, at ¶ 4; D.E. 90-1, Pl.'s Opp'n Br., Statement of Facts, at ¶ 9).

Brands, Inc. ("Bluestem")—the servicer for MetaBank—sent the Welcome Packet and the Original Agreement in the mail to Mr. Amansec's Hackensack, New Jersey address.[13] Mr. Amansec contends that he never received the documents[14] and explains that for a time in May 2012 he temporarily moved to Pennsylvania.[15] He provided a forwarding address to the post office.[16] He then moved to Bergenfield, New Jersey on June 1, 2012, but did not provide a change of address form to the post office.[17] The Original Agreement contained an arbitration provision and class waiver providing:

> By requesting this Account from us and accepting this Agreement, you agree that if a dispute of any kind arises out of this Agreement, either you or we, at our sole discretion, can choose to have the dispute resolved by binding arbitration…. There shall be no authority for any Claims to be arbitrated on a class action basis. An arbitration can only decide your or our Claim and may not consolidate or join the claims of other persons who may have similar claims.[18]

Fingerhut's records indicate that on June 30, 2012, Mr. Amansec made a purchase from Fingerhut.[19] On July 1, 2012, MetaBank sold the rights to Mr. Amansec's account to WebBank, and Midland Credit certifies that before the sale occurred, Mr. Amansec was notified that

---

[13] (*Id.*, at ¶¶ 4–6).

[14] (D.E. 84-13, Bartel Decl., Ex. K, at 15:19–20; 36:14–19).

[15] (*Id.*, at 30:7–14; 56:9–14).

[16] (*Id.*, at 41:14–17; 48:2).

[17] (*Id.*, at 54:4–23).

[18] (D.E. 84-5, Def.'s Mot., Ex. C, at 7).

[19] (D.E. 84-10, Def.'s Mot, Ex. H, at 2–3, 11).

WebBank would become his new credit issuer.[20] Midland Credit claims that an updated credit card agreement ("Updated Agreement") reflecting the change in ownership was sent to Mr. Amansec at his Hackensack address.[21] Mr. Amansec contends that he did not receive the Updated Agreement.[22]

The Updated Agreement also contained an arbitration provision and class waiver.[23] The pertinent terms include:

> Arbitration. Please review this provision carefully. It provides that any dispute may be resolved through binding arbitration. Arbitration replaces the right to go to court and the right to have a jury decide the dispute. Under this provision, your rights may be substantially limited in the event of a dispute….
>
> By accepting this Agreement, unless you opt out by following the instructions below, you agree that either you or we, at our sole discretion, can chose to have any dispute arising out of or relating to this Agreement or our relationship resolved by binding arbitration…
>
> Disputes brought as part of a class action or other representative basis are subject to arbitration on an individual (non-class, non-representative) basis.[24]

Additionally, it included a choice of law provision specifying Utah law would apply to disputes arising out of it.[25]

---

[20] (D.E. 13-5, Svensen Aff., at ¶ 10).

[21] (D.E. 84-1, Def.'s Mot. Br., State of Undisputed Facts, at ¶ 15; D.E. 97-1, Def.'s Resp. to Pl.'s Statement of Undisputed Facts, at ¶ 19).

[22] (D.E. 90-1, Pl.'s Opp'n Br., at ¶ 19).

[23] (D.E. 84-4, Def.'s Mot., Ex. B, at 4–5).

[24] (*Id.*).

[25] (*Id.*, at 5).

Regarding his purchase order placed on June 30, 2012, Mr. Amansec contends that he never received the items because they were mailed to the Hackensack address where he longer resided.[26] Mr. Amansec testified that at least one of the items was delivered to the Hackensack address and his landlord had the item.[27] Fingerhut's records indicate that on July 5, 2012, Mr. Amansec informed Fingerhut that the order contained the wrong address; on July 9, 2012, he inquired about the status of his order and advised that he moved to a new address; on July 11, 2012, he called with return policy questions; and on July 13, 2012, Fingerhut advised it was unable to correct the address on the order because it had already shipped.[28]

In February 2013, WebBank sold its rights under the Updated Agreement to Bluestem, and then Bluestem sold those rights to Midland Funding, LLC ("Midland Funding").[29] Midland Credit services Midland Funding's debts.[30] After he failed to make payments, Midland Credit attempted to collect Mr. Amansec's debt, which led to the filing of this action.[31] In December 2015, Mr. Amansec alleges he paid in full his debt following a settlement.[32]

Midland Credit initially moved to compel arbitration in August 2016, and the parties disputed whether Mr. Amansec received the Original or Updated Agreements.[33] The Court found

---

[26] (D.E. 84-13, Bartel Decl., Ex. K, at 41:22–42:1).

[27] (*Id.*, at 48:22–49:6).

[28] (D.E. 84-10, Def.'s Mot., Ex. H, at 10).

[29] (D.E. 90-1, Pl.'s Opp'n Br., at ¶¶ 23–24).

[30] (D.E. 84-1, Def.'s Mot. Br., at ¶ 27).

[31] (D.E. 1, Compl., at ¶¶ 35, 46).

[32] (D.E. 90-1, Pl.'s Opp'n Br., at ¶ 29).

[33] (D.E. 30, R. & R., at 11).

that "a genuine dispute as to whether Mr. Amansec received any written terms persists."[34] For that reason, the Court determined that "the parties should be entitled to discovery on the question of arbitrability."[35] Specifically, the parties were instructed to "resolve the question of whether Mr. Amansec received the Original or Updated Agreement's written terms with the aid of limited discovery."[36]

Judge Wigenton adopted the Report and Recommendation,[37] and thereafter, this Court ordered the parties to engage in limited discovery regarding "the issue of arbitrability."[38] The parties engaged in this limited fact discovery until its closure in November 2018.[39]

Midland Credit now renews its motion to compel individual arbitration and dismiss Mr. Amansec's Complaint.[40]

## II. LEGAL STANDARD

The Federal Arbitration Act provides that a written contract provision pertaining to a commercial transaction "shall be valid, irrevocable, and enforceable."[41] Upon refusal of a party to arbitrate, the aggrieved party may petition for enforcement in the District Court by motion to

---

[34] (*Id*.).

[35] (*Id*., at 12).

[36] (*Id*.).

[37] (D.E. 31, Order).

[38] (D.E. 33, Order, at ¶ 1).

[39] (D.E. 67, Am. Sch. Order).

[40] (D.E. 84, Def.'s Mot.).

[41] 9 U.S.C. § 2.

compel arbitration.[42] Any doubts concerning the scope of arbitrability should be resolved in favor of arbitration,[43] in light of the "liberal federal policy favoring arbitration agreements."[44]

When deciding a motion to compel arbitration, the inquiry focuses on: (1) whether the parties have entered into a valid arbitration agreement, and (2) whether the dispute in question falls within the scope of the agreement.[45] The Third Circuit clarified "the standards to be applied to motions to compel arbitration, identifying the circumstances under which district courts should apply the standard for a motion to dismiss, as provided by Rule 12(b)(6) . . . , and those under which they should apply the summary judgment standard found in Rule 56."[46]

Courts should apply the Rule 12(b)(6) standard, "when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of the party's claims are subject to an enforceable arbitration clause . . . without discovery's delay."[47] On the other hand, "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the

---

[42] 9 U.S.C. § 4.

[43] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

[44] *Moses H. Cone Mem'l Hosp.*, 460, U.S. at 24.
[45] *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009).

[46] *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 767 (3d Cir. 2013).

[47] *Id.* at 776 (citations and internal quotation omitted).

question of arbitrability."[48] After such discovery, "the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard."[49]

### III. DISCUSSION

"A federal court has limited jurisdiction to address a challenge to the validity of an arbitration agreement."[50] In a case where there is a challenge to the "arbitration clause itself – an issue which goes to the making of the agreement to arbitrate – the federal court may proceed to adjudicate it."[51] Under the FAA, this Court is not permitted "to consider claims challenging the contract generally" and must only decide whether a valid agreement to arbitrate exists.[52] Here, Midland Credit is seeking to enforce the arbitration provision in the Agreements. Mr. Amansec contests the enforceability of the arbitration provision by arguing that because he never received either the Original or Updated Agreements, mutual assent to arbitrate this dispute is lacking.

Midland Credit's argument that Mr. Amansec assented to the Agreements is premised upon the common law mailbox rule. Under the mailbox rule, "if a letter properly directed is proved to have been either put into the post office or delivered to the postman, it is presumed . . . that it reached its destination at the regular time, and was received by the person to whom it was addressed."[53] The party who seeks to invoke the mailbox rule bears the initial burden of proving

---

[48] *Id.* (citations and internal quotation omitted).

[49] *Id.*

[50] *Hall v. AT&T Mobility LLC,* 608 F. Supp. 2d 592, 596 (D.N.J. 2009).

[51] *Id.* (internal citations omitted).

[52] *Id.*

[53] *Rosenthal v. Walker*, 111 U.S. 185, 193 (1884); *Phila. Marine Trade Ass'n-Int'l Longshoremen's Ass'n Pension Fund v. Comm'r*, 523 F.3d 140, 147 (3d Cir. 2008).

the mailing.[54] The presumption "is not a conclusive presumption of law," and instead it is a rebuttable "inference of fact founded on the probability that the officers of the government will do their duty and the usual course of business."[55] When delivery is sent via regular mail, for which no proof of delivery exists, there is a weaker presumption than compared to when it is sent via certified mail.[56] Without concrete proof of delivery, "receipt can be proven circumstantially by introducing evidence of business practices or office customs pertaining to mail," including "in the form of a sworn statement."[57]

Once there is sufficient evidence that the mailing took place, "the presumption of receipt imposes the burden of production on the party against whom it is directed."[58] The party against whom the presumption operates must put forth evidence to rebut the presumption, thereby "destroy[ing] that presumption, leaving only that evidence and its inferences to be judged against the competing evidence and its inferences to determine the ultimate question at issue."[59] Notably, "a single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment," even if the affidavit is self-serving.[60]

---

[54] *Lupyan v. Corinthian Colls. Inc.*, 761 F.3d 314, 320 (3d Cir. 2014).

[55] *Rosenthal*, 111 U.S. at 193–94 (citations omitted).

[56] *Lupyan*, 761 F.3d at 319.

[57] *Id.; see also In re Cendant Corp. Prides Litig.*, 311 F.3d 298, 304 (3d Cir. 2002).

[58] *Lupyan*, 761 F.3d at 320 (internal quotation omitted).

[59] *Id.* (citation omitted).

[60] *Id.* at 320–21.

The Court first considers whether Midland Credit, the party invoking the mailbox rule, meets its burden of proof.[61] As to the Original Agreement, Midland Credit maintains that it was mailed to Mr. Amansec at his provided Hackensack address; he still lived at that address when the Welcome Packet and Original Agreement were mailed; he assented to the Original Agreement when he made a purchase; his purchase was delivered to the Hackensack address; and when he moved, he either had his mail forwarded or hand-delivered to him by a friend.[62] Midland Credit certifies that in May 2012, the Welcome Packet enclosing the Original Agreement was mailed to Mr. Amansec,[63] but the affidavit in which Midland Credit relies does not provide extensive discussion of routine business practices regarding mailing of card agreements. Although not specified, the Court presumes that the mail was sent by regular mail, creating a weaker presumption than if mailed by certified mail. A party giving a sworn statement about mail practices must "have personal knowledge of the procedures in place at the time of the mailing."[64] It is not clear whether the affiant—the Vice President of Bluestem—had personal knowledge of the mailing procedures in place at the time of the alleged mailing in 2012.[65]

As to the Updated Agreement, Midland Credit asserts that the Updated Agreement was mailed to the Hackensack address, but prior to it taking effect, Bluestem notified Mr. Amansec by

---

[61] *See id.* at 320.

[62] (D.E. 84-1, Def.'s Mot. Br., at 17).

[63] (D.E. 84-5, Svensen Aff., at ¶ 8).

[64] *Lupyan*, 761 F.3d at 320 (internal quotation omitted).

[65] *See Kimmel v. Cavalry Portfolio Servs.*, No. 11-680, 2011 WL 3204841, at *4–5 (E.D. Pa. July 28, 2011).

letter that WebBank would become his new creditor.[66] The corresponding affidavit submitted by Midland Credit merely states that Mr. Amansec was notified "before the sale of the [Fingerhut] Account" that WebBank would become his new credit issuer.[67] The affidavit is devoid of any language specifying that the Updated Agreement was mailed to Mr. Amansec, and instead only explains that "the account agreement was updated and now titled the WebBank Fingerhut Credit Account Agreement."[68]

Interestingly, Mr. Amansec does not contest that a weak presumption exists.[69] Instead, he urges the Court to find that he carried his burden of overcoming that presumption.[70] The Court is not entirely convinced that Midland Credit met its burden of establishing the rebuttable presumption—in large part because the affidavit submitted by Midland Credit lacks details and the facts at issue remain uncertain. However, the Court will continue its analysis to determine whether Mr. Amansec rebuts the presumption as if Midland Credit successfully established the presumption.

Mr. Amansec denies receiving "a credit card, the card agreement, the arbitration agreement or anything in the mail," and repeats that he "never received an arbitration agreement."[71] Contrary to Midland Credit's contentions, "a single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary

---

[66] (D.E. 84-1, Def.'s Mot. Br., Statement of Undisputed Facts, at ¶¶ 10–15).

[67] (D.E. 84-5, Svensen Aff., at ¶ 10).

[68] (*Id*.).

[69] (D.E. 90-1, Pl.'s Opp'n Br., at 11).

[70] (*Id*.).

[71] (D.E. 89-9, Pl.'s Opp'n, Ex. F, at ¶¶ 5, 16).

11

judgment," even if the affidavit is self-serving.[72] The Third Circuit explained that "[w]here ordinary mail is used, requiring more than a sworn statement to dispute receipt elevates the weak presumption intended by the mail box rule to a conclusive presumption that would be equivalent to an ironclad rule."[73] Midland Credit's citations to numerous non-Third Circuit cases to assert that Mr. Amansec has not rebutted the presumption are unavailing. Mr. Amansec's certification provides his personal knowledge directed at the material issue of whether he received the Agreements, and his deposition testimony, along with Midland Credit's exhibits, lend some support to his contention.

A review of the timeline of events, although still unclear, is insightful. Mr. Amansec relocated, twice, in a very short period of time, during which most crucial events occurred. For his first relocation, he alerted the post office, but it is unclear when he provided this notice; and for the second relocation, he did not alert the post office. The Court finds it possible that Mr. Amansec relocated to Pennsylvania prior to the Welcome Packet's arrival at his Hackensack residence. Such a scenario is supported by Mr. Amansec's position that he provided his social security number, as opposed to a credit card or account number, to identify his Fingerhut Account when he made his purchase via telephone.[74] Further, Mr. Amansec relocated to Bergenfield just two weeks after relocating to Pennsylvania. Fingerhut's records indicate that on July 5, 2012, Mr. Amansec informed Fingerhut that the order contained the wrong address[75]—just five days after MetaBank sold the rights to Mr. Amansec's account to WebBank. It is unclear whether his new address was

---

[72] *Lupyan*, 761 F.3d at 320–21.

[73] *Id*. at 322.

[74] (D.E. 90-2, Pl.'s Br., Supplemental Statement of Disputed Material Facts, at ¶ 16).

[75] (D.E. 84-10, Def.'s Mot., Ex. H, at 10).

updated because the records indicate that on July 9 and 13, Mr. Amansec again advised his change in address.[76]

The Court is required to consider the record in the light most favorable to Mr. Amansec because it judges this motion under a summary judgment standard.[77] The Court agrees with Mr. Amansec and finds that his sworn statement, along with the totality of the factual record, rebut the presumption afforded to Midland Credit. The parties continue to dispute "undisputed facts," many of which are material to the determination of whether Mr. Amansec received either of the Agreements.

A genuine issue of material fact persists, and the Court is in no better a position now to determine arbitrability than it was on the original motion to compel arbitration. The Court cannot conclude that Mr. Amansec mutually assented to arbitrate and although a presumption in favor of arbitration exists, it "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties."[78]

The Court decides Midland Credit's motion based on the unresolved issue of whether Mr. Amansec received either of the Agreements. Mr. Amansec's motion for leave to file a sur-reply concerns an argument that the Court need not reach, specifically the language of the arbitration provision. The record and prior submissions in this matter are sufficient for this Court to decide Midland Credit's motion.[79] Because the Court decides Midland Credit's motion without reviewing the language of the arbitration provision, Mr. Amansec's motion is deemed moot.

---

[76] (*Id.*).

[77] *See Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 767 (3d Cir. 2013).

[78] *Kirleis v. Dickie, McCarney & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009).

[79] *See Smith v. Merck & Co.*, No. 13-2970, 2016 WL 1690087, at *1 n.1 (April 27, 2016).

## IV. RECOMMENDATION

For the reasons discussed herein, it is respectfully recommended Mr. Amansec's motion for leave to file a sur-reply be **DENIED AS MOOT** and Defendant Midland Credit's motion to compel individualized arbitration and dismiss the action be **DENIED.** The parties have fourteen (14) days to file and serve any objections to this Report and Recommendation.[80] The District Court need not consider frivolous, conclusive, or general objections.[81]



Honorable Steve Mannion, U.S.M.J.
United States District Court,
for the District of New Jersey
phone: 973-645-3827

7/18/2019 5:52:25 PM

Original: Clerk of the Court
Hon. Susan D. Wigenton, U.S.D.J.
cc: All parties
    File

---

[80] 28 U.S.C. § 636; L. Civ. R. 72.1(c)(2).

[81] *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir.1987) (internal citations omitted).